Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL II

| | | |
|---|---|---|
| MYRTA MORALES CRUZ<br><br>Recurrente<br><br>v.<br><br>CONSEJO DE TITULARES CONDOMINIO CARIBBEAN TOWERS<br><br>Recurrido | KLRA202300598 | *Revisión* procedente del Departamento de Asuntos del Consumidor<br><br>Caso Núm. C-SAN-2022-0011812<br><br>Sobre:<br>Ley de Condominios |

Panel integrado por su presidente el Juez Bermúdez Torres, el Juez Adames Soto y la Juez Aldebol Mora

## SENTENCIA

En San Juan, Puerto Rico, a 31 de enero de 2024.

### I.

El 15 de octubre de 2019, el Consejo de Titulares del Condominio Caribbean Towers convocó una "Asamblea Ordinaria Anual". Según la agenda de dicha Asamblea, se discutiría la aprobación del cambio de la fachada para sustituir los parapetos existentes en el lado este y oeste por unos de cristal. En la Asamblea celebrada el 5 de noviembre de 2019, se presentaron reportes de ingenieros respecto al deterioro de los parapetos y el peligro de que estos se desprendieran, además de las cotizaciones para el remplazo del material de los parapetos de los lados este y oeste. Se advirtió, además, que cualquier cambio de fachada requeriría la aprobación del 75% de los titulares, a tenor con lo dispuesto en la Ley de Condominios, Ley Núm. 104-1958[1]. La votación resultó en la aprobación de cambios en el material de los parapetos existentes, a unos de cristal.

---

[1] Es menester puntualizar que la Ley Núm. 104-1958 fue derogada por la Ley Núm. 129- 2020, conocida como la "Ley de Condominios de Puerto Rico", 31 LPRA § 1921. No obstante, para la asamblea convocada el 15 de octubre de 2019 la ley vigente era la derogada Ley Núm. 104-1958.

El 26 de octubre de 2020, se convocó a los titulares a otra Asamblea Ordinaria Anual a celebrarse el 14 de noviembre de 2020 a las 4:00PM. En la agenda para dicha asamblea se incluyó una propuesta para cambiar los parapetos del lado norte y sur del edificio por unos de cristal, que fuesen iguales a los que se habían instalado en el lado este y oeste. Para esta Asamblea celebrada en la fecha pautada, se constituyó un *quórum* de 36 titulares y 13 representados por proxy. La propuesta fue rechazada por la Asamblea, por lo que no se aprobó el cambio de los parapetos del lado norte y sur por unos de cristal. Dicho resultado fue recogido en la Acta Enmendada del 14 de noviembre de 2020.

La señora Morales Cruz establece que en la convocatoria de dicha asamblea es en donde se introduce por primera vez la discusión de cambiar los parapetos del lado norte y sur del edificio. De igual forma, alega que en ningún lugar de dicha convocatoria se expresa que el asunto a discutir se trata de un cambio de fachada a los lados norte y sur, como fue textualmente expresado en la convocatoria del 15 de octubre de 2019, con respeto a los lados este y oeste.

El 23 de mayo de 2022, el Consejo convocó a una Asamblea Extraordinaria para el 4 de junio de 2022. Allí, se abrían de discutir, entre otros temas, la aprobación de trabajos de remoción y reconstrucción de parapetos de los lados norte y sur del edificio. […]". Del acta de dicha Asamblea surge que, el titular Gerardo Zayas presentó una moción para que se votara por un cambio en el material existente de los parapetos del lado norte y sur del edificio, entre rejas o cristal. Aunque el asunto no figuraba entre las propuestas a discutirse en la Asamblea, fue favorecido por la mayoría de los titulares y así aprobado. Además, se aprobó de manera unánime, que se continuaran los trabajos de remoción y reconstrucción de los parapetos del lado norte y sur.

A raíz de ello, el 4 de julio de 2022, la señora Myrta Morales Cruz presentó de manera electrónica a través del Sistema Integrado de Asuntos del Consumidor (SIAC), la querella Núm. C-SAN-2020-0011812. Solicitó:

> 1. Que se declaren nulas todas las determinaciones tomadas en la asamblea extraordinaria del 4 de junio de 2022 por contravenir la Ley de Condominios y haber sido presentadas ante el Consejo de Titulares de forma engañosa.
>
> 2. Que se informe de inmediato cuales son los parapetos que están en peligro de caerse y que estos se remuevan o anclen de inmediato. Si son parapetos que sirven solo de franja decorativa bien pueden removerse y pintarse. Si son de los parapetos que fungen como balcón, que se sustituyan con las rejas que ya existen en estos mismos balcones.
>
> 3. Que se ordene un estudio de ingeniería y carga, para documentar con evidencia los asuntos de seguridad apremiantes en el condominio y se lleve dicho informe a la atención del Consejo de Titulares para su atención en cuanto a prioridades, costos, manejo de las mejoras que allí se recomienden y se comience cuanto antes el proyecto de reacondicionamiento según los estándares de construcción.
>
> 4. Que se haga estudio de presencia de plomo y asbesto en el condominio, asunto traído por primera vez en la asamblea del 4 de junio de 2022 y que la minuta no recoge como ni tan siquiera mencionado en asuntos nuevos.

Luego de varios trámites procesales, el 25 de octubre de 2022, el Consejo de Titulares presentó una *Moción de Resolución Sumaria de Querella*. En la misma levantó la defensa de prescripción, ya que, según alegaron, se trataba de una impugnación a las determinaciones anteriores de la Junta de Directores y/o del Consejo de Titulares la cual había sido presentada en exceso al término de treinta (30) días que dispone el Art. 65 de la Ley Núm. 129-2020.[2] Explicaron, que, en SIAC la misma aparecía radicada el 11 de agosto de 2023. Además, se argumentó que, a la fecha de la aprobación de la obra de remoción y reconstrucción de los parapetos del Condominio, solo se requería el voto del 75% de los titulares,

---

[2] *Ley de Condominios de Puerto Rico*, Ley Núm. 129- 2020, 31 LPRA § 1921.

según disponía el Art. 15(e) de la Ley Núm. 261-2012[3]. No se requería el voto unánime del Consejo de Titulares, por tratarse de una obra que modificaba la fachada. Finalmente, argumentó, que tanto la Ley Núm. 104-1958 en su Art. 38(c) como la Ley Núm. 129-2020 en su Art. 52, disponen que una vez sea acordado por el Consejo de Titulares determinada obra o proyecto, los proyectos o las medidas accesorias para la ejecución y realización final de tal obra o proyecto, no estarán sujetos a la aprobación de todos los titulares ya que bastará, en caso de requerirse, consultarle al Consejo para la autorización por voto mayoritario.

En respuesta, el 14 de noviembre de 2022, la señora Morales Cruz presentó *Oposición a Moción para Resolución Sumaria de Querella*. En esencia, planteó que por lo que se votó y fue aprobado fue un cambio de fachada del lado este y oeste del edificio y no de la totalidad del edificio. El 28 de noviembre de 2022, el Consejo de Titulares presentó *Réplica a Oposición a Moción para Resolución Sumaria de Querella*.

Así las cosas, mediante *Resolución Sumaria* emitida el 20 de septiembre de 2023, el DACO desestimó la querella y ordenó su cierre y archivo. Fundamentó su decisión en que para realizar los cambios en la fachada el Articulo 15(e) de la derogada Ley Núm. 104-1958, vigente al momento de la celebración de la asamblea, requería solo la aprobación del 75% de todos los titulares y no la unanimidad. Además, estableció que tanto la derogada Ley 104-1958 en su Artículo 38C(d) como la actual Ley 129-2020 en su Artículo 52(c) requerían que una vez se acuerde por el Consejo de Titulares por voto cualificado determinada obra o proyecto, el cual en este caso era el 75%, los detalles o las medidas accesorias para la ejecución y realización final de la obra o proyecto, podían ser

---

[3] Para enmendar el inciso (e) del Artículo 15 y el inciso (e) del Artículo 38 de la Ley Núm. 103 de 2003, Ley de Condominios, Ley Núm. 261-2012.

autorizados por voto mayoritario. Añadió, que la Querella estaba prescrita por haberse radicado fuera del término de treinta (30) días dispuesto bajo el Art. 65 de la Ley 129-2020.[4]

Oportunamente, el 10 de octubre de 2023, la señora Morales Cruz presentó una *Solicitud de Reconsideración*. Por su parte, el 23 de octubre de 2023, el Consejo de Titulares presentó *Oposición a Solicitud de Reconsideración*. El 17 de noviembre de 2023, la Lcda. Mildred López Pérez, Directora de la Oficina Regional de San Juan del DACO, realizó una *Certificación* en la cual se establece que surge del SIAC que la querella C-SAN-2022-0011812 fue radicada en el sistema el 4 de julio de 2022. Se añade que la fecha del 11 de agosto de 2022 fue la fecha en la cual se le asignó número de querella por los funcionarios.

Insatisfecha con la *Resolución Sumaria* del 20 de septiembre de 2023, el 21 de noviembre de 2023, la señora Morales Cruz acudió ante nos mediante *Recurso de Revisión*. Plantea:

> **Primer Error:**
> Erró el DACO al concluir que la querella fue radicada o presentada el 11 de agosto de 2023 cuando de la prueba surge que la fecha de reclamo y fecha de presentación fue el 4 de julio de 2022, y por tanto, la acción de la titular no está prescrita.
>
> **Segundo Error:**
> Erró el DACO al resolver la querella de forma sumaria y no citar para vista conforme a la Regla 11 del Reglamento de Procedimientos Adjudicativos del DACO (8034) pues la parte recurrente estableció mediante reconsideración la existencia de una controversia real sobre hechos pertinentes.

El 28 de noviembre de 2023, emitimos *Resolución* concediendo treinta (30) días al Consejo de Titulares para que fijara su posición. El 21 de diciembre de 2023, el Consejo de Titulares presentó *Alegato de Oposición al Recurso de Revisión*.

---

[4] El 17 de noviembre de 2023, la licenciada Mildred López Pérez, Directora de la Oficina Regional de San Juan del DACO, realizó una *Certificación* en la cual se establece que surge del SIAC que la querella C-SAN-2022-0011812 fue radicada en el sistema el 4 de julio de 2022. Se añade que la fecha del 11 de agosto de 2022 fue la fecha en la cual se le asignó número de querella por los funcionarios.

II.

A.

La Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAU), Núm. 38-2017, según enmendada,[5] establece nuestra facultad revisora sobre las decisiones emitidas por los organismos administrativos. Esta revisión judicial tiene como propósito limitar la discreción de las agencias y asegurarse de que desempeñen sus funciones conforme a la ley y de forma razonable.[6] En esta dinámica, las decisiones administrativas gozan de una presunción de legalidad y corrección, por lo que las conclusiones e interpretaciones de los organismos administrativos especializados, merecen gran deferencia.[7]

**El estándar de revisión de una decisión administrativa se circunscribe a determinar si esta actuó de forma arbitraria, ilegal o irrazonable, constituyendo sus acciones un abuso de discreción**.[8] Al desempeñar esta función revisora, estamos obligados a considerar la especialización y experiencia de la agencia, diferenciando entre las cuestiones de interpretación estatutaria, área de especialidad de los tribunales, y las cuestiones propias de la discreción o pericia administrativa.[9]

En tal sentido, estamos facultados a determinar: (1) que el remedio concedido por la agencia fue el apropiado; (2) la revisión de las determinaciones de hecho conforme al criterio de evidencia sustancial revisión de las determinaciones de hecho conforme al criterio de evidencia sustancial; y (3) determinar si las conclusiones de derecho fueron correctas mediante su revisión completa y

---

[5] 3 LPRA § 9601.
[6] *Ifco Recycling* v. *De Desperdicios Sólidos*, 184 DPR 712, 743 (2012).
[7] *Capó Cruz* v. *Junta de Planificación*, 204 DPR 581, 591 (2020); *Torres Rivera* v. *Pol. de Puerto Rico*, 196 DPR 606, 626 (2016); *Batista, Nobbe* v. *JTA. Directores*, 185 DPR 206, 212 (2012); *Ifco Recycling*, 184 DPR, pág. 744.
[8] *Capó*, 204 DPR, pág. 592; *Torres*, 196 DPR, pág. 626; *Ifco Recycling*, 184 DPR, pág. 745, citando a *Empresas Ferrer* v. *ARPE*, 172 DPR 254, 264 (2007).
[9] *Ifco Recycling*, 84 DPR, pág. 744; *Maranello et al.* v. *OAT*, 186 DPR 780, 792 (2012).

absoluta.[10] Sostendremos las determinaciones de hecho, en tanto y en cuanto obre evidencia suficiente en el expediente de la agencia para sustentarla.[11] En cuanto a las determinaciones de Derecho, tenemos amplia facultad para desplegar nuestra función revisora, pues, estamos en igualdad de condiciones para interpretar los estatutos.[12] Claro, ello no implica que podamos descartar libremente las conclusiones e interpretaciones de la agencia,[13] pues es norma reiterada que a toda determinación administrativa le cobija una presunción de regularidad y corrección.[14] Esta presunción, apuntalada en el conocimiento especializado de la agencia, debe respetarse mientras la parte que la impugne no produzca evidencia suficiente para derrotarla.[15]

Es decir, se presume que el organismo administrativo posee un conocimiento especializado en aquellos asuntos que le fueron encomendados por el legislador que merece ser visto con respeto y deferencia. Por ello, nuestra función revisora se circunscribe a evaluar la razonabilidad de la decisión recurrida, a la luz de las pautas trazadas por el legislador y el criterio de evidencia sustancial.[16]

## III.

En el recurso, la señora Morales Cruz alega, en primer lugar, que DACO incidió al concluir que su acción estaba prescrita por haber sido radicada o presentada el 11 de agosto de 2022, ya que la fecha del reclamo y de presentación fue el 4 de julio de 2022 y a

---

[10] *Capó*, 204 DPR, pág. 591; *Torres*, 196 DPR, *págs.* 626-627; *Pagán Santiago et al.* v. *ASR,* 185 DPR 341, 358 (2012).
[11] *Capó*, 204 DPR, pág. 591; *Torres*, 196 DPR, pág. 627; *Ifco Recycling*, 184 DPR, *pág.* 744.
[12] 3 LPRA § 9675.
[13] *Batista*, 185 DPR pág. 217.
[14] *Capó*, 204 DPR, pág. 591; *Torres*, 196 DPR, pág. 627; Batista, 185 DPR, pág. 217.; *Ifco Recycling*, 184 DPR, *pág.* 744.
[15] *Torres*, 196 DPR, pág. 626; *Trigo Margarida* v. *Junta Directores*, 187 DPR 384, 393-394 (2012); *Batista,* 185 DPR pág. 215; *Ifco Recycling*, 184 DPR, pág. 744.
[16] *Batista*, 185 DPR, pág. 216; *Accumail P.R.* v. *Junta Sub. A.A.A.,* 170 DPR 821, 829 (2007); *Otero* v. *Toyota*, 163 DPR 716, 729 (2005); *Pacheco* v. *Estancias,* 160 DPR 409, 432 (2003).

dicha fecha no había transcurrido el plazo de 30 días que establece el Art. 65 de la Ley Núm. 129-2020. Tiene razón. Veamos por qué.

Surge del expediente, que la decisión que impugna la señora Morales Cruz fue tomada por el Consejo de Titulares en la Asamblea celebrada el 4 de junio de 2022. Morales Cruz presentó una Querella de manera electrónica 4 de julio de 2022 y en esa misma fecha recibió un correo electrónico emitido por la plataforma SIAC, acreditando la presentación de la reclamación. De hecho, el 17 de noviembre de 2023, el DACO emitió *Certificación* que confirma que la Querella fue radicada el 4 de julio de 2022, aunque no fue hasta el 11 de agosto de 2022 que los funcionarios de DACO le asignaron número de Querella. Siendo la fecha de radicación el 4 de julio de 2022, la Querella fue presentada oportunamente dentro del término de treinta (30) días establecido por ley. Erró la Agencia recurrida al expresar que la misma estaba prescrita.

IV.

En su segundo señalamiento de error, la señora Morales Cruz sostiene que erró el foro recurrido al resolver la *Querella* de manera sumaria. Indica que debió citar para vista debido a que esta había establecido mediante reconsideración la existencia de una controversia real sobre hechos pertinentes. Específicamente, alega que se encontraba en controversia el hecho de que la propuesta que se realizó en la Asamblea del 5 de noviembre de 2019, discutía el cambio de fachada solamente del lado este y oeste del edificio y no de todo el edificio como estableció en su *Resolución Sumaria* DACO. Veamos la corrección de su planteamiento.

Según expuso el DACO en su *Resolución Sumaria,* a la luz de la Ley de Condominios, ley especial que cae bajo el área de especialización de la agencia, y conforme a la prueba que obra del expediente administrativo, lo aprobado y discutido en la Asamblea celebrada el 4 de junio de 2022 era una continuación de un proyecto

de reemplazo de parapetos que fue aprobado y comenzado en el año 2019. Los acuerdos logrados en la misma se alcanzaron con el voto de la mayoría, conforme exigía la Ley de Condominios. Coincidimos.

De las constancias del expediente consideramos que, no surgen indicios de que DACO actuara de manera irrazonable o que haya abusado de su discreción. A su decisión, debemos deferencia, pues versa sobre asuntos que se encuentran dentro de su especialidad y peritaje. La señora Morales Cruz no logró derrotar la presunción de corrección que cobija dicha determinación. Confirmamos.

V.

Por los fundamentos antes expuestos, se *confirma* la *Resolución Sumaria* recurrida.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones